■ In the Matter of BLERIM M., Respondent, v RACQUEL M., Respondent. THE CHILDREN'S LAW CENTER, Appellant. [839 NYS2d 57]—

Order, Family Court, Bronx County (Alma Cordova, J.), entered on or about January 16, 2007, which denied the father's petition for modification of a prior order of custody, unanimously reversed, on the law, without costs, the petition reinstated, and the matter remanded for further proceedings consistent herewith before a different judge. The children are directed to remain in the custody of petitioner pending the determination of the Family Court on remand.

Petitioner father and respondent mother are the parents of the four subject children, and have resided together in the Bronx and Albany. In 2005, respondent and the children were living in Albany. Petitioner lived in the Bronx at that time, and visited the children in Albany on weekends.

On March 10, 2005, respondent filed a petition for custody of the children in Albany County Family Court. After being referred to mediation, the parties reached an agreement that was incorporated into an Albany Family Court order, dated August 1, 2005, providing, in pertinent part, that the parties would have joint custody of the minor children. The children would reside with the respondent during the school year. Since she was relocating to North Carolina, the order directed her to notify petitioner of school activities and provide a copy of the school calendar at the beginning of the school year. The children would reside with the petitioner during any school breaks lasting one week or more, and during the summer months.

On or about August 25, 2005, respondent and the children moved to North Carolina. Petitioner immediately inquired about the name of the school that the school-age children would be at-

tending. Respondent was evasive, promising to provide that information. She never did. Unbeknownst to petitioner, on July 8, 2005, prior to her relocation, respondent filed an application to open a religious home school in North Carolina, to begin operating on August 15. Additionally, respondent refused to provide information to petitioner regarding other aspects of the children's living situation, including the identities of other persons living in the home.

Failing to obtain any information from respondent, petitioner initially sought redress in a North Carolina court, which rebuffed his effort. He then attempted to file a petition in Albany County, which advised him to file in the Bronx, his county of residence. Thereafter, on February 3, 2006, less than six months after the children left New York, he commenced this proceeding in Bronx County Family Court, seeking modification of the prior order of custody, alleging, inter alia, that respondent was home-schooling the children without his consent, interfering with his interstate visitation, and instructing the children not to give him any information about who was watching them, living with them or if they were hurt. Respondent was served with this petition but never appeared in the proceeding.

On March 29, 2006, the return date of the petition, the court attorney-referee questioned whether Family Court had jurisdiction over the proceeding, stating New York had minimal contact with the children and all the information and facts necessary to determine the petition are in North Carolina. After petitioner advised her that North Carolina had refused to take jurisdiction of this case, she adjourned the matter to June 5, 2006.

On the adjourned date, the referee again questioned whether New York had jurisdiction. She also indicated that the court had notified respondent to appear, and noted her absence. The matter was adjourned to July 26, and the referee indicated that the court would notify respondent to appear on that date.

On July 26, 2006, respondent again failed to appear. Petitioner advised the referee that the three younger children were in New York for visitation, although respondent refused to permit visitation with the oldest child. The law guardian advised the referee that the oldest child has learning disabilities, and confirmed that respondent refused to permit the visitation required by the August 1, 2005 custody order. She also advised the referee that respondent was living a communal existence with "a mysterious, small religious group" in which nonparents are allowed to spank the children. Once again, citing lack of jurisdiction, the referee adjourned the matter to have respondent

notified, again expressing her belief that North Carolina was the proper venue for this matter.

Petitioner and the law guardian next appeared before the referee on September 18, 2006. Although respondent had sent a letter requesting permission to appear by telephone, and proper proof of service was presented, the referee stated she could not hear the matter without first obtaining respondent's consent. There is no indication that any attempt to contact respondent was made at that time. Upon petitioner's request, the matter was referred to a Family Court Judge.

The first appearance before a judge took place on December 4, 2006. Although respondent had sent another request to appear by telephone, again no attempt to contact her was made. Petitioner advised the court that he had learned in September that respondent intended to home-school the children over his objection, and that she refused to permit him to see the inside of her apartment or share any information with him about the apparently communal nature of her residence. She also refused to provide him with any information regarding the persons caring for the children or to discuss his concerns as to whether others were permitted to discipline the children. Additionally, petitioner again stated that respondent refused to permit visitation with the oldest child.

When the court asked why petitioner had waited until February 2006 to file a petition, he detailed his futile efforts to obtain relief in North Carolina and Albany. Indicating that North Carolina should have jurisdiction, as the children had resided and attended school there for more than a year, the court directed the parties to file written submissions on this issue by December 21, and the matter was adjourned until January 16, 2007.

The law guardian requested an extension of time to January 16 to file her papers. She claims that request was granted by the judge's court attorney.

Petitioner's papers in support of New York jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (Domestic Relations Law § 75 *et seq.*) argued that there had been a change in circumstances since entry of the consent joint custody order in that respondent (1) was home-schooling the children without his consent; (2) was not addressing the special needs of the oldest child; (3) was permitting an unidentified male to inflict corporal punishment on the children; (4) had violated petitioner's visitation rights; (5) was living in a communal religious setting with the children; and (6) refused to share information with him regarding the children. Petitioner also argued that North Carolina had rejected his petition, New

York was the home state of the children at the time the petition was filed, and the factors relating to the convenience of litigating militated in favor of New York. Finally, petitioner contended that if the court declined to exercise jurisdiction over this custody proceeding, it should communicate with the North Carolina court to determine whether it would assume jurisdiction.

On January 5, 2007, petitioner filed an order to show cause in Bronx County Family Court, stating that the children, who had been visiting with him in New York since December 22, 2006, had informed him that other people in respondent's home were using excessive corporal punishment on them. He stated he feared for their safety, and that they were not permitted to attend normal public school and were kept in the house. He further stated that he had brought the children to see the law guardian on January 3, 2007. He requested an emergency modification of prior court orders, that an investigation be conducted, and that the children remain with him during the pendency of that investigation.

The Administration for Children's Services (ACS), State Central Register, and the Onslow County (North Carolina) child protective authorities were notified, and an investigation was commenced. On January 12, 2007, an ACS caseworker reported that she was seriously concerned about these allegations, particularly as they applied to the oldest child, who was obviously learning disabled, had eye problems, had received no special educational or other services, and had been without his glasses for nearly a year and a half. The North Carolina authorities declined to investigate this complaint, and referred it back to New York, with an offer to assist upon their formal request.

On the scheduled adjourned date of January 16, 2007, the court handed copies of a previously prepared, five-page written decision concerning jurisdiction. The court determined that although New York maintained continuing exclusive jurisdiction, it would be in the best interest of the children to decline jurisdiction in favor of North Carolina, since the children had resided there for more than six months, and it would be more convenient to determine petitioner's allegations in that state. The law guardian objected that even though the judge's court attorney had permitted her to file her papers on the adjourned date, the court refused to consider them, although the law guardian was allowed to make her papers part of the record.

The law guardian then requested the court to assert temporary emergency jurisdiction in light of the serious child protective issues, including severe corporal punishment inflicted by unknown members of respondent's household, the failure of the

children to attend school for over a year, the absence of home schooling, and the fact that the oldest child was not receiving proper medical attention for his eye condition and was without his glasses for over a year. The court, having declined jurisdiction over the custody matter, refused to entertain the application or take testimony of a social worker in support of temporary emergency jurisdiction.

We issued a stay pending appeal, and directed that the children remain in petitioner's custody.

There is no question that the Albany County Family Court had jurisdiction to make an initial child custody determination since the children had resided in New York for more than six months prior to the filing of the petition (Domestic Relations Law § 76 [1] [a]). Moreover, when petitioner sought modification of the August 1, 2005 custody order, the children had been in North Carolina for less than six months and he was still a resident of Bronx County. Thus, the court correctly determined that New York had continuing exclusive jurisdiction to modify the joint order of custody (Domestic Relations Law § 76-a [1]).

A court with continuing exclusive jurisdiction may nonetheless decline to exercise such jurisdiction "if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum" (Domestic Relations Law § 76-f [1]). However, before declining jurisdiction in favor of a court of another state, a New York court must consider the factors set forth in section 76-f (2) and permit the parties to submit information with respect to all relevant factors (*Matter of Greenidge v Greenidge*, 16 AD3d 583 [2005]).

Here, the court refused to consider the law guardian's submission in contravention of Domestic Relations Law § 76-f (2). Whether the law guardian mistakenly believed the time to submit her papers was extended or not, the failure to take into account the information contained in her papers essentially deprived the children of the opportunity to participate fully in the proceedings (*Matter of White v White*, 267 AD2d 888, 890 [1999]). Additionally, the court did not list, in its citation of the papers relied upon, petitioner's submission and exhibits on the jurisdiction question or the January 5, 2007 order to show cause seeking an immediate change of custody. Since respondent appeared, and there is no indication that any attempt to accommodate her request to appear telephonically was made, the court essentially had little or no relevant information from any party with respect to the issue of whether New York was "an inconvenient forum under the circumstances" to resolve this litigation (Domestic Relations Law § 76-f [1]).

It appears that the court, in arriving at its determination to decline jurisdiction, only considered two factors as listed in Domestic Relations Law 76-f (2), namely: "(b) the length of time the child has resided outside this state" and "(f) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child." However, when all the factors are considered, it appears that the children retained substantial connections with New York and that significant evidence was present in this state.

The children resided outside this state less than six months when the petition was initially filed. The fact that significant delays in the proceedings occurred, mostly through no fault of petitioner, does not alter this fact. Indeed, there were breaks during that period, such as for Easter vacation and the summer of 2006, that were spent in New York with petitioner. Such visitation periods can, in appropriate circumstances, be a factor in determining whether a child continues to have a significant connection with New York (*Vernon v Vernon*, 100 NY2d 960, 972 [2003]).

On the issue of the corporal punishment inflicted on the children by nonfamily members, and whether it is likely to recur in the future (Domestic Relations Law § 76-f [2] [a]), the witnesses to this claim are the children themselves, who are presently in New York. Should respondent wish to call witnesses from outside New York, such witnesses can testify by alternate means (Domestic Relations Law §§ 75-j, 75-k). Significantly, these allegations were being investigated by New York agencies after North Carolina declined to investigate them. Additionally, since the children had not attended public schools in North Carolina, and allegedly were not receiving proper medical care, there would be no records from those agencies for the court to rely on. However, petitioner has enrolled the children in New York schools and has taken them to New York doctors, and those records are readily available to a New York court.

In short, the court made its jurisdictional decision without properly applying the statutory scheme for such determinations. Moreover, in light of the particular and unusual circumstances of this matter, the case on remand should be heard by a different Family Court judge.

In view of the foregoing, we need not reach the issue of whether Family Court was obligated to exercise its emergency jurisdiction when requested to do so. Concur—Andrias, J.P., Gonzalez, Sweeny, McGuire and Malone JJ.